IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 3:20-mj-00035-MMS |
| CHRISTINE PAGADUAN DELACRUZ | ) ) ) |
| Defendant. | ) ) ) |

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Special Agent Thomas Zajac, being duly sworn, depose and state that:

1. I have probable cause to believe that CHRISTINE PAGADUAN DELACRUZ has committed the following crimes:

**Count 1 – Conspiracy to Distribute Controlled Substances**: Between about May 2019 and about January 2020, within the District of Alaska, CHRISTINE PAGADUAN DELACRUZ knowingly and intentionally combined, conspired, confederated and agreed together with other persons known and unknown to me to distribute and to possess with intent to distribute controlled substances to wit: 50 grams or more of actual methamphetamine and 100 grams or more of a mixture and substance containing a detectable amount of heroin; all of which is in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 846.

**Count 2 – Distribution of Controlled Substances**: On or about May 17, 2019, within the District of Alaska, CHRISTINE PAGADUAN DELACRUZ knowingly and

JAN 2 3 2020

intentionally distributed a controlled substance, heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

**Count 3 – Distribution of Controlled Substances**: On or about May 22, 2019, within the District of Alaska, CHRISTINE PAGADUAN DELACRUZ knowingly and intentionally distributed a controlled substance, heroin and 50 grams or more of actual methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).

**Count 4 – Distribution of Controlled Substances**: On or about June 22, 2019, within the District of Alaska, CHRISTINE PAGADUAN DELACRUZ knowingly and intentionally distributed a controlled substance, heroin and 50 grams or more of actual methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).

**Count 5 – Distribution of Controlled Substances**: On or about July 13, 2019, within the District of Alaska, CHRISTINE PAGADUAN DELACRUZ knowingly and intentionally distributed a controlled substance, heroin and 50 grams or more of actual methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).

**Count 6 – Distribution of Controlled Substances**: On or about July 26, 2019, within the District of Alaska, CHRISTINE PAGADUAN DELACRUZ knowingly and intentionally distributed a controlled substance, heroin and 50 grams or more of actual methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).

**Count 7 – Distribution of Controlled Substances**: On or about August 8, 2019, within the District of Alaska, CHRISTINE PAGADUAN DELACRUZ knowingly and intentionally distributed a controlled substance, heroin and 5 grams or more of actual methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B).

## BACKGROUND

2. I am an investigative or law enforcement officer of the United States, within the meaning of 18 U.S.C. § 2510(7), and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

3. I have been a Special Agent with the FBI since January 2017. Since that time, I have been assigned investigative responsibilities in the areas of drug and gang investigation in the Anchorage Field Office where I am currently assigned. The Anchorage Field Office is located within the District of Alaska. During this assignment, I have focused on drug and gang investigations. I have become familiar with the methods commonly used by drug traffickers in Alaska. I have been involved in cases involving the investigation and prosecution of defendants for violations of Title 21 of the United States Code.

4. Through the FBI, I received 21 weeks of specialized training at the FBI Academy in Quantico, Virginia, where I became familiar with how controlled substances are consumed, manufactured, packaged, marketed and distributed. My training and experience has involved, among other things: (1) the debriefing of defendants, witnesses and informants, as well as others who have knowledge of the distribution and transportation of controlled substances and of the laundering and concealment of proceeds of drug trafficking; (2) surveillance; (3) analysis of documentary and physical evidence; and (4) the execution of search warrants.

//

//

## PURPOSE OF AFFIDAVIT

5. I make this affidavit in support of a complaint under Federal Rules of Criminal Procedure 3. I believe that there is probable cause to believe that the offenses described in paragraph 1 have been committed and that DELACRUZ committed them, and so pursuant to Federal Rule of Criminal Procedure 4(a), I respectfully ask that the court issue a warrant for the arrest of DELACRUZ.

6. I make this affidavit based, in part, on personal knowledge derived from my participation in this investigation and, in part, upon information and belief. The sources of my information and belief are: (oral and written reports about this and other investigations, which I have received directly or indirectly from officers/agents of the Anchorage Police Department (APD), Alaska State Troopers (AST), Drug Enforcement Administration ("DEA"), the Federal Bureau of Investigation ("FBI") and/or inspectors from the United States Postal Inspection Service; as well as sources of information as identified herein; and physical and electronic surveillance conducted by law enforcement entities which was reported to me directly or indirectly. This affidavit is intended to show merely that there is sufficient probable cause, and does not set forth all of my knowledge about this matter.

## FACTS IN SUPPORT OF PROBABLE CAUSE

7. In July 2018 the High Intensity Drug Trafficking Area (HIDTA) Anchorage Airport Interdiction Team conducted a controlled evidence purchase with a CHS. This CHS was observed purchasing drugs from an individual positively identified as LAMSON SONEOULAY.

8. On May 7, 2019, APD Detective Elmore debriefed a CHS after officers contacted this CHS during a traffic stop. During the debrief CHS disclosed he/she could buy methamphetamine and heroin from an Asian female adult named CHRISTINE DELACRUZ. CHS had known DELACRUZ for over a year, having completed numerous drug transactions with her during this time. CHS advised DELACRUZ almost always had drugs on her person or in her vehicle. CHS provided a contact phone number of 907-887-4153 for DELACRUZ. CHS additionally used the Facebook app on his/her cellphone and showed APD Detective Elmore DELACRUZ's profile. APD Detective Elmore later compared the profile picture of DELACRUZ with a DMV photograph and positively identified her. CHS also indicated the source of supply for DELACRUZ was a male known to CHS as "SONEOULAY".

9. **Controlled Drug Buy one (1) of six (6):** On May 17, 2019 CHS placed a consensual phone call to DELACRUZ's cellphone, 907-887-4153, and ordered one half ounce of methamphetamine and four grams of heroin. APD Detective Elmore was present with CHS during the phone call. DELACRUZ agreed to meet with CHS to complete the transaction. CHS advised APD Detective Blanton the half ounce of methamphetamine would cost $250 and the price of each gram of heroin was $100.

10. APD Detective Blanton drove CHS to the buy location. CHS alerted APD Detective Blanton to the target, DELACRUZ, as she arrived driving a black Acura SUV. CHS then received a text from DELACRUZ advising she had arrived.

11. APD Detective Blanton provided CHS with the prerecorded buy funds in the amount of $650. CHS entered DELACRUZ's vehicle and conducted the transaction.

12. APD Officer Veenstra positively identify the driver of this vehicle as DELACRUZ. APD Officer Veenstra observed that DELACRUZ was alone in the vehicle prior to CHS entering it.

13. After the transaction took place CHS walked back to APD Detective Blanton's vehicle and provided APD Detective Blanton with the drugs just purchased.

14. APD Detective Aldridge weighed the drugs without the packaging, weighing a total of 5.3 grams. He then conducted a field test of the suspected heroin and it was a presumptive positive for the presence of heroin.

15. APD Detective Blanton debriefed CHS, who provided the following information: during the transaction DELACRUZ explained she had a bad batch of methamphetamine and did not want to sell it to CHS. CHS made the decision to purchase five grams of heroin from DELACRUZ for $630. In the presence of CHS, in her vehicle, DELACRUZ removed a piece of heroin from her purse and cut off two chunks of heroin from a larger piece. The pieces were weighed out and given to CHS in a cigarette pack. DELACRUZ also informed CHS that she had additional product with her to give to two other people who she was waiting to meet. CHS further observed a safe on the floor board of the passenger side that took up most of the foot well where CHS's feet were located.

16. **Controlled Drug Buy two (2) of six (6):** On May 22, 2019, a drug transaction was arranged between CHS and DELACRUZ. CHS contacted DELACRUZ utilizing her telephone number 907-887-4153. The transaction was arranged for two ounces of methamphetamine and one half ounce of heroin to be purchased for $2,200. APD Detective Blanton drove CHS to the drug purchase location. DELACRUZ again arrived in

the same black Acura MDX bearing Alaska license plate GLX175. During the transaction and while CHS was inside DELACRUZ's vehicle, DELACRUZ answered a call on her cellphone from a male and DELACRUZ had the call on speaker phone. CHS heard the male's voice during the conversation and identified the voice as SONEOULAY who called. CHS had heard SONEOULAY's voice multiple times and stated that SONEOULAY was DELACRUZ's source of supply.

17. DELACRUZ's cell phone records indicate the cell phone number that called her on May 22, 2019 during at the time of this drug buy was 907-306-3539. APD Detectives verified this number is being used by SONEOULAY.

18. APD Detective Aldridge weighed the drugs. The suspected heroin weighed a total of 12.5 grams and field tested positive for the presumptive presence of heroin. The suspected methamphetamine weighed a total of 56 grams and field tested positive for the presumptive presence of methamphetamine.

19. On June 20, 2019, CHS was directed to visit DELACRUZ at her residence to see why she had not been answering CHS's telephone calls. The conversation was recorded (pursuant to State of Alaska electronic monitoring search warrant 3AN-19-01670SW). SONEOULAY called and could be heard during the contact with Delacruz and CI. The voice sounded like the same male voice heard during the drug buy on May 22, 2019.

20. DELACRUZ told CHS that SONEOULAY warned DELACRUZ it was "hot" (a term understood to mean there was law enforcement presence) near DELACRUZ's residence and that she should be careful. This caused DELACRUZ to be nervous about

driving her vehicle with drugs in her possession. SONEOULAY told DELACRUZ that it was better for her to drive drugs around during the day than at night because law enforcement could follow her easier at night without her knowing than during the daytime. SONEOULAY was heard over the phone telling DELACRUZ to find a nice hotel on C street and that SONEOULAY would need "a whole thing" (a phrase understood to law enforcement to represent an amount of drugs or money).

21. **Controlled Drug Buy three (3) of six (6):** On June 22, 2019, a drug transaction was arranged between CHS and DELACRUZ. CHS contacted DELACRUZ utilizing her telephone number 907-887-4153. The amount to be purchased was two ounces of methamphetamine and one ounce of heroin for $3,200. DELACRUZ again arrived in the same black Acura MDX bearing Alaska license plate GLX175. During the transaction Delacruz was actively looking for a location to cash two cashier's checks made out in her name in the amount of $7,000 each. DELACRUZ told CHS she needed to get the money to "L" (a term used to indicate Lamson SONEOULAY) so she could "re-up" (a common term understood to mean to be re-supplied with more drugs from SONEOULAY). According to CHS, DELACRUZ had three large rolls of U.S. currency. CHS believed the cashier's checks and three large rolls of cash were intended for a large payment to SONEOULAY in order for DELACRUZ to be re-supplied with a large amount of drugs.

22. APD Detective Aldridge weighed the drugs. The suspected heroin weighed a total of 20.3 grams and tested positive for the presumptive presence of heroin. The suspected methamphetamine weighed a total of 56.2 grams and tested positive for the presumptive presence of methamphetamine.

23. Following this drug transaction, DELACRUZ was surveilled by law enforcement. The next stop DELACRUZ made was at the Money Mart located at 6311 Debarr Road, Anchorage, AK. DELACRUZ was observed by law enforcement entering the store and shortly after leaving with an envelope that appeared to be approximately one half inch to three quarters of an inch thick.

24. **Controlled Drug Buy four (4) of six (6):** On July 13, 2019, a drug transaction was arranged between CHS and DELACRUZ. CHS contacted DELACRUZ utilizing her telephone number 907-887-4153. The amount to be purchased was two ounces of methamphetamine and two grams of heroin for $1,200. DELACRUZ again arrived in the same black Acura MDX bearing Alaska license plate GLX175.

25. APD Detective Blanton weighed the drugs. The suspected heroin weighed a total of 2.2 grams and tested positive for the presumptive presence of heroin. The suspected methamphetamine weighed a total of 56.3 grams and tested positive for the presumptive presence of methamphetamine.

26. **Controlled Drug Buy five (5) of six (6):** On July 26, 2019, a drug transaction was arranged between CHS and DELACRUZ. CHS contacted DELACRUZ utilizing her telephone number 907-887-4153. The amount to be purchased was three ounces of heroin and two ounces of methamphetamine for $7,000. At approximately 1830 hours law enforcement personnel observed DELACRUZ's black Acura MDX bearing Alaska license plate GLX175 parked at her residence. A vehicle that appeared to be a Subaru sedan similar to the Subaru that SONEOULAY was known to drive was observed parked inside the garage door which was open. Another vehicle in the driveway was a Honda sedan with a

roof rack and distinct red front emblem bearing Oregon license plate 800DLS, registered to Lamson SONEOULAY's brother, David SONEOULAY. CHS reported that SONEOULAY drove this Honda. SONEOULAY had been observed driving this Honda sedan by APD Detectives during past surveillance operations. SONEOULAY has two brothers, David SONEOULAY and Sinxay SONEOULAY. During multiple protracted surveillance operations members of APD and FBI have independently identified the three SONEOULAY brothers and were able to differentiate their distinct physical characteristics.

27. Prior to CHS arriving at DELACRUZ's residence, at approximately 2058 hours, the Honda bearing license plate 800DLS departed DELACRUZ's residence, driving west bound on Port Orford Drive. SONEOULAY was not positively identified as the driver of the Honda but electronic surveillance showed SONEOULAY's location to be moving west bound at the same time. At approximately 2202 hours electronic surveillance showed SONEOULAY's location to be in the Spenard area, west Anchorage. At approximately 2342 hours electronic surveillance showed SONEOULAY's location to have returned to DELACRUZ's residence.

28. At approximately 2123 hours DELACRUZ instructed CHS to come to her residence (7745 Port Orford Drive, Anchorage, AK) to make the transaction. CHS was at DELACRUZ's residence from approximately 2135 hours until 2231 hours. CHS reported that DELACRUZ told CHS that SONEOULAY would be returning to DELACRUZ's residence because she owed SONEOULAY $7,000. CHS reported on multiple instances that SONEOULAY did not like any of DELACRUZ's drug customers to be present while

SONEOULAY was meeting with DELACRUZ nor did SONEOULAY want DELACRUZ to sell drugs from her residence at all. DELACRUZ had forced CHS to leave abruptly in the past when SONEOULAY showed up at DELACRUZ's residence so that SONEOULAY did not see CHS. SONEOULAY did not want anyone to know his identity as DELACRUZ's supplier.

29. While inside DELACRUZ's residence, CHS observed a large zip-lock bag containing approximately two pounds of methamphetamine. DELACRUZ also had approximately one half pound of heroin stored inside her purse.

30. Following this transaction, APD Detective Blanton weighed the drugs. The suspected heroin weighed a total of 76.7 grams and tested positive for the presumptive presence of heroin. The suspected methamphetamine weighed a total of 55.7 grams and tested positive for the presumptive presence of methamphetamine.

31. **Controlled Drug Buy six (6) of six (6):** On August 8, 2019, a drug transaction was arranged between CHS and DELACRUZ. CHS contacted DELACRUZ utilizing her telephone number 907-887-4153. The amount to be purchased was four grams of heroin and one ounce of methamphetamine for $880.

32. Prior to CHS arriving at DELACRUZ's residence, at approximately 1645 hours a gray Subaru sedan bearing license plate GUV329 was parked in the driveway at DELACRUZ's residence. SONEOULAY was positively identified as the driver of this Subaru at approximately 1702 hours, as SONEOULAY departed DELACRUZ's residence. CHS was instructed not to arrive at DELACRUZ's residence until SONEOULAY departed DELACRUZ's residence.

33. During this transaction DELACRUZ instructed CHS to remain in DELACRUZ's garage because DELACRUZ had another male inside her house. CHS overheard DELACRUZ and the male inside discussing bank locations where the male could cash a check. Denali Federal Credit Union was one bank location mentioned by the male inside and DELACRUZ. DELACRUZ referred to this male as "Skippy". While DELACRUZ was weighing the heroin in the garage, she heard a vehicle pull into the driveway at approximately 1736 hours and frantically instructed CHS to leave immediately through the back door. DELACRUZ later informed CHS that the driver who pulled up during this transaction was "Hillbilly". According to CHS, DELACRUZ believed it was SONEOULAY who pulled into the driveway; thus, the reason DELACRUZ instructed CHS to leave immediately so that SONEOULUAY would not see CHS.

34. Following this transaction, APD Detective Aldridge weighed the drugs. The suspected heroin weighed a total of 5.1 grams and tested positive for the presumptive presence of heroin. The suspected methamphetamine weighed a total of 27.4 grams and tested positive for the presumptive presence of methamphetamine.

35. On September 24, 2019, Anchorage Airport Interdiction Team obtained a Fed-Ex package containing approximately 20 pounds of methamphetamine. The package was bound for 7330 Tanaga Circle, Anchorage, AK. SONEOULAY is known through surveillance to frequent this address.

36. On January 8, 2020, DELACRUZ was located at her residence 7745 Port Orford Drive, Anchorage, AK using electronic monitoring. At approximately 1400 hours SONEOULAY was observed driving a silver Dodge Durango bearing license plate

U.S. v. Delacruz
3:20-mj-00035-MMS                Page 12 of 15

JAN 2 3 2020

Case 3:20-mj-00035-MMS   Document 1-1   Filed 01/23/20   Page 12 of 15

KEF118 and at approximately 1406 hours was observed pulling into the driveway at 7745 Port Orford Drive and departed at approximately 1441 hours. At approximately 1957 hours DELACRUZ departed her residence driving a 2009 black Chevrolet Silverado bearing license plate JKC683 and was surveilled. At approximately 2028 hours both the Dodge Durango, KEF118, and Silverado, JKC683, were observed parked in front of 4641 Juneau Street, Unit # 108. The parking spaces appear to be located directly in front of each unit to which they are assigned. Each unit appears to have its own stairwell granting access solely to that unit's front door. At approximately 2030 hours DELACRUZ and SONEOULAY were observed walking directly to their respective vehicles from the apartment building. At approximately 2034 hours DELACRUZ and SONEOULAY departed this location and were surveilled. DELACRUZ was stopped by an APD marked unit after committing a traffic violation. A strong odor was noted, which the APD detectives present identified as consistent with the smell of Heroin. DELACRUZ's large hand bag was sitting open on the front passenger seat of the vehicle in plain view containing translucent zip-lock bags with a dark substance known by training and experience to be consistent with Heroin. A search of her vehicle revealed 651 grams of suspected Heroin, 1017 grams suspected Methamphetamine, 27.9 grams suboxone strips, 14 grams suspected Cocaine, a handgun, and $20,235 U.S. currency.

## PHYSICAL SURVEILLANCE

37. Surveillance is an investigative technique that is used to confirm meetings and other suspected criminal activity between alleged participants.

38. During surveillance of DELACRUZ while conducting controlled drug purchases, law enforcement has observed SONEOULAY leaving or arriving at DELACRUZ's residence on multiple occasions. Attempts to surveil SONEOULAY have been made extensively and have been challenging due to his erratic driving behavior, counter-surveillance techniques, and unpredictable schedule. SONEOULAY has been observed driving different vehicles which are not registered in his name.

39. On August 22, 2019, physical and electronic surveillance was conducted on SONEOULAY from approximately 1200 hours to 1500 hours. No suspicious activity was observed. SONEOULAY traveled from his residence and entered the Federal Court Building, 222 W. 7th Ave, Anchorage, AK 99513.

40. On August 29, 2019, physical surveillance was conducted on SONEOULAY from approximately 1600 hours to 2000 hours. At approximately 1652 hours SONEOULAY was observed removing a small rectangular package from the back of his vehicle and taking it into DELACRUZ's residence. At approximately 1735 hours DELACRUZ was observed departing her residence and drove to Hillside Park, 7011 Abbott Rd, Anchorage, AK 99507. At approximately 1742 hours a white male arrived in a black pick-up truck bearing license plate JJX156 and got into DELACRUZ's vehicle for a brief amount of time before leaving. At approximately 1744 hours a second male arrived in a brown Chevrolet Tahoe bearing license plate JLX518 and got into DELACRUZ's vehicle for a brief amount of time before leaving. At approximately 1747 hours DELACRUZ departed Hillside Park in her vehicle. In my training and experience, brief meetings such as these in a public area are consistent with drug trafficking. Furthermore,

CHS reporting identified Hillside Park as one of DELACRUZ's frequent meeting locations to sell narcotics.

41. At approximately 1759 hours, surveillance observed DELACRUZ and SONEOULAY outside of DELACRUZ's residence. At approximately 1834 hours, a white male positively identified as Scott RUMANER departed DELACRUZ's residence driving a maroon Honda CRV bearing license plate LBT877. RUMANER is a known narcotics distributor in the Kenai, AK area. RUMANER was a frequent caller of SONEOULAY. I believe that SONEOULAY was RUMANER's main narcotics supplier. At approximately 1852 hours, shortly after RUMANER departed, SONEOULAY departed DELACRUZ's residence driving a white Jeep. SONEOULAY parked the white Jeep facing north on Service Road, Anchorage, AK and got into a black pick-up truck bearing Alaska license plate 1090. The black pick-up truck drove SONEOULAY to his residence, 7217 Bern Street, Anchorage, AK, 99507.

THOMAS ZAJAC
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me this 23 day of January, 2020.



UNITED STATES MAGISTRATE JUDGE

U.S. v. Delacruz
3:20-mj-00035-MMS

Page 15 of 15

Case 3:20-mj-00035-MMS   Document 1-1   Filed 01/23/20   Page 15 of 15